MICHELLE R. BURROWS OSB 86160
Attorney at Law
618 NW Glisan St. Ste. 203
Portland OR 97209
503/241-1955
503/241-3127 (facsimile)
mrburrows@qwest.net

Attorney for Plaintiff

IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| WARREN COVEY BROWN | ) | Case No. CV '05 1293 AA |
| | ) | |
| Plaintiff, | ) | COMPLAINT |
| | ) | |
| v. | ) | Prisoner Civil Rights Violations |
| | ) | Medical Care 8th Amendment |
| Dr. IAN DUNCAN, Dr. GARTH GULICK | ) | |
| Dr. JAN DAHLIN, Mr. STEPHEN SMITH, | ) | |
| P.A., IRENE FOLKMAN, R.N., JANE | ) | |
| AND JOHN DOES 1-10. | ) | |
| | ) | Jury Trial Demanded |
| Defendants. | ) | |

INTRODUCTORY STATEMENT

1.

This civil rights action filed by Plaintiff, an incarcerated person, is brought under 42 U.S.C. §1983, alleging denial of medical care, personal safety and due process in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

2.

This court has jurisdiction over Plaintiff claims of violations of federal constitutional

1–PLAINTIFF'S COMPLAINT

rights under 28 U.S.C. §§1331 and 1343.

3.

Venue is proper under 28 U.S.C.§1391(b), in that one or more of the defendants reside in the District of Oregon and Plaintiff's claims for relief arose in this district.

THE PARTIES

4.

Plaintiff is, and was at all times relevant an incarcerated person in the custody and control of the State of Oregon, by and through, the Department of Corrections. Plaintiff was incarcerated at the Snake River Correctional Institution.

5.

Defendant Ian Duncan was at all times an employee of the Department of Corrections and was employed as a physician at the SRCI infirmary and was plaintiff's primary treating physician Defendant Duncan is sued in his individual and official capacity.

6.

Defendant Garth Gulick was at all times an employee of the Department of Corrections and was employed as a physician at the SRCI infirmary. Dr. Gulick was involved in the care and treatment of Plaintiff herein. Defendant Gulick is sued in his individual and official capacity.

7.

Dr. Jan Dahlin was at all times a contract employee of the Department of Corrections and was one of the physicians who examined and treated Plaintiff herein. Defendant Dahlin is sued in his individual and official capacity.

2–PLAINTIFF'S COMPLAINT

8.

Defendant Stephen Smith was at all times herein an employee of the Oregon Department of Corrections and was employed as a physicians' assistant at the infirmary of the Snake River Correctional Institution. Defendant Smith is sued in his individual and official capacity.

9.

Defendant Irene Folkman was at all times herein an employee of ODOC employed as a nurse and was a treating medical provider for Plaintiff. Defendant Folkman is sued in her individual and official capacity.

10.

Defendants John and Jane Does are employees of the Oregon Department of Correction and were employed as nurses or medical staff at the Snake River Correctional Institution. Plaintiff is unable to read their names in the medical record and will amend the complaint as soon as the identity of each one is made known and available. Defendant Does are sued in their individual and official capacity.

11.

All defendants have acted under color of state law at all times relevant to this complaint.

12

Plaintiff is entitled to an award of attorneys fees and costs, pursuant to 42 U.S.C. §1988.

13.

Plaintiff has exhausted all available remedies through the ODOC grievance procedures.

3–PLAINTIFF'S COMPLAINT

Plaintiff's grievances and all appeals were denied by the Oregon Department of Corrections.

14.

Plaintiff sent a notice of Tort Claim pursuant to Oregon Revised Statutes 30. In response the State of Oregon, by and through the Department of Administrative Services denied Plaintiff had a valid claim and advised plaintiff that his exclusive remedy was a workers' compensation claim pursuant to ORS 655.505. This denial of claims violates the preemption of the rights held by prisoners pursuant to 42 U.S.C. 1983 and is an unlawful application of state law to prohibit the use of available federal remedies.

FACTUAL ALLEGATIONS

15.

On December 8, 2004 Plaintiff was working in mandatory employment cleaning venting. He was required to engage in this work without safety equipment and was required to climb on a top bunk in each cell and step on a toilet seat to reach the vents. He fell from the metal toilet seat and broke the fifth metatarsal in his right foot.

16.

Plaintiff's supervisor insisted he be taken to the prison infirmary where he was seen by a nurse only, not examined by a physician, no x-rays were taken and he was advised to elevate his foot and to apply ice. There was no ice available to Plaintiff in his living quarters. Plaintiff was discharged with an ace bandage only. Plaintiff's foot was deeply bruised, swollen and he was in some extreme pain.

4--PLAINTIFF'S COMPLAINT

Michelle R. Burrows
Attorney at Law
618 NW Glisan Ste. 203
Portland OR 97209
503/241-1955

17.

Between December 9, 10 and 11 Plaintiff was unable to walk. He was required to continue to work and was not given any time off. In this time period Plaintiff's foot became badly swollen, deeply bruised and his toes all turned purple and blue and swollen. Plaintiff did not have any pain management medication.

18.

On December 12 Plaintiff sent a written request to the infirmary to be seen and advised them he believed one of his metatarsal were broken. The medical chart does not accurately reflect this information despite the written communication to them. Plaintiff was called to the infirmary on December 15 and was examined by Defendant Smith a physician's assistant. Defendant Smith examined the foot and advised Plaintiff he believed the foot was broken but failed to refer Plaintiff to a physician, failed to order an x-ray, failed to place Plaintiff's foot in a restraint and failed to provide any work restrictions. Smith prescribed Motrin.

19.

Twelve days after the injury on December 20, 2004 Plaintiff received a call from the infirmary to have an x-ray taken. The x-ray indicated the fifth metatarsal of the right foot was broken at a hard 45° angle and the two broken halves were dislocated from each other with the posterior section of bone appearing to be freely floating away from the rest of the foot by several millimeters.

20.

On December 24, 2005 Plaintiff sent another written communication to the

5–PLAINTIFF'S COMPLAINT

infirmary when he had not heard from any physician about his x-rays. The request went to Dr. Ian Duncan, who failed to respond to Plaintiff request, failed to examine Plaintiff, failed to order any treatment for the broken foot, failed to order work restriction, failed to prescribe pain management medication and failed in all respects to address a serious medical condition.

21.

On December 24, 2005 Plaintiff was called to the infirmary. No medical staff were present to examine him and a note was left by a nurse that Plaintiff's ace bandage was to be confiscated. This order was left without any physical examination of Plaintiff. The security personnel who received the note refused to comply and allowed Plaintiff to keep his bandage.

22.

On December 28, 2005 Plaintiff was called to the infirmary to see Defendant Smith. Smith advised Plaintiff he had consulted with an orthopedic specialist who advised that the foot was fine and would heal on its own. Smith agreed the foot was broken and that the two separated pieces of bone did not appear to be aligned in a manner conducive to repair. Defendant Smith failed to refer Plaintiff to a physician, failed to provide restraint for the foot, failed to take follow up x-rays to monitor any worsening of the condition, failed to issue work restriction orders. Smith continued the prescription of Motrin despite the fact that there was some indication it was not medically indicated for Plaintiff who was also taking a serotonin re-uptake inhibitor. Smith promised another x-ray in February.

23.

Throughout all the month of December and into January Defendant was required to wear

6–PLAINTIFF'S COMPLAINT

Michelle R. Burrows
Attorney at Law
618 NW Glisan Ste. 203
Portland OR 97209
503/241-1955

his prison issued boots, and was required to continue to work. Any failure to go to work would result in disciplinary action. His foot was swollen, bruised and he was in significant pain and discomfort.

24.

On January 3, 2005 Defendant Jan Doe #1 R.N. called Plaintiff to the infirmary and demanded his ace bandage again. She became angry and abusive toward Plaintiff when he protested. Defendant Jane Doe #1 R.N. failed to refer Plaintiff to a physician, failed to consult with a physician prior to demanding the bandage back, failed to issue a work restriction or to administer some restraint for Plaintiff's foot.

25.

Plaintiff sent two written communications to the infirmary staff on January 3 and 21st advising them of his ongoing difficulties with foot and pain. Plaintiff continued to ask to be examined by a physician and asked that his broken foot be treated. Nothing happened. It is unknown which defendant Does read or received the written communication and failed to act.

26.

Plaintiff was called to see Defendant Smith on January 24, 2005. Plaintiff advised Smith of his ongoing pain, the failure to treat his broken foot, the worsening condition of his foot and his need to replace the Motrin as it was causing stomach distress. Smith told Plaintiff to buy his own aspirin at his own expense from the canteen and refused to provide any other pain management.

7–PLAINTIFF'S COMPLAINT

Michelle R. Burrows
Attorney at Law
618 NW Glisan Ste. 203
Portland OR 97209
503/241-1955

27.

On January 27, 2005 Plaintiff was called to the infirmary for x-rays. The attending nurse refused to allow Plaintiff to view the x-rays but insisted on showing the x-rays to Defendant Gulick. This consult is not noted in the medical chart. Dr. Gulick met with Plaintiff in the exam room. This was the first time since the injury Plaintiff had been seen by a physician for his injuries. Dr. Gulick was advised that Plaintiff was not using crutches or a cane. Plaintiff had not been prescribed either one of these in any prior visit. Dr. Gulick advised Plaintiff that he was going to require surgery to repair the break in his foot. This consult is not noted in the medical chart.

28.

On January 28, 2005 Plaintiff was called to the infirmary to see Defendant Smith who notes in the medical chart no deformity, no swelling, no bruising and Plaintiff is ambulatory. Smith advised Plaintiff the fracture was not knitting properly. Smith advised Plaintiff he was scheduled to see Dr. Dahlin in one month. Smith advised that Plaintiff would be called to the infirmary once a week so he "did not fall through the cracks". That was the last visit with Defendant Smith.

29.

Plaintiff sent a communication to the infirmary on January 30, 2005. He was not called to medical until February 4, 2005. No medical personnel examined him. He was ordered to surrender his ace bandage at that time. He was told failure to surrender the bandage would result in being sent to disciplinary confinement, the hole. It is unknown which Defendant Doe ordered

8–PLAINTIFF'S COMPLAINT

the surrender of the bandage without a physician consult or personal examination.

30.

Plaintiff was called to medical on February 6, 2005. The attending defendant Doe nurse had no information on the reason for the call out. She gave Plaintiff another ace bandage. Plaintiff advised her he was still in a great deal of pain and was not able to walk well with his foot. This information is not charted.

31.

Plaintiff was called to the infirmary two more times before he saw Dr. Dahlin on February 16. In each visit Plaintiff saw a Defendant Doe and advised of the ongoing pain, the difficulty walking, the difficulty working and the need to see a physician. At no time until February 16, 2005 was Plaintiff ever examined by a physician. At that time Plaintiff advised Defendant Dahlin that he was in a lot of pain in his heel, toes, knees and left hip from the odd angle he had been walking with this broken foot. Dr. Dahlin indicated he could not recommend any treatment until and unless it was approved by the Therapeutic Levels of Care Committee. Dr. Dahlin did not document in the chart his personal opinion or judgement as to the status of Plaintiff's injury.

32.

Dr. Dahlin did not consult with a foot specialist until February 25, 2005 and he charted that the patient preferred surgery. Defendant Dahlin failed to act and once again charted that the patient still prefers surgery on March 4, 2005. The matter was charted as having been presented to the TLC on March 9, 2005. Plaintiff advised medical staff he had an attorney on February 25

9--PLAINTIFF'S COMPLAINT

Michelle R. Burrows
Attorney at Law
618 NW Glisan Ste. 203
Portland OR 97209
503/241-1955

and which was charted on March 10, 2005. The TLC approved surgery on March 9, 2005.

33.

On March 15, 2005 Plaintiff is charted as having requested time to consult with this attorney before any surgery. The chart reveals that Plaintiff advised the medical staff he was meeting with his lawyer that Friday March 18, 2005. Plaintiff was taken for surgery on Thursday March 17, 2005 and was still in the infirmary when he was called to meet with his attorney on March 18, 2005. After his visit with his attorney on March 18, 2005 he was approached by a correction officer who advised him that he had been ordered to conduct a strip search of Plaintiff immediately following his visit with his attorney. Plaintiff was in a wheelchair and his foot was in a cast at this time.

34.

On March 17, 2005 Plaintiff's foot was operated on and a screw was placed transfixing the fracture. Plaintiff was prescribed vicodin for pain management on that same date. Plaintiff was also prescribed a crutch and a foot cast for the first time. Plaintiff missed no work due to the medical condition and was never approved to miss any work by defendant staff.

CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF: Defendants Duncan, Dahlin and Gulick
8th Amendment Cruel and Unusual Punishment–42 U.S.C. §1983
Medical Conditions of Confinement: delay and denial of essential medical care

35.

Plaintiff reallages paragraphs 1 through 34 as if more fully set forth herein.

10–PLAINTIFF'S COMPLAINT

Michelle R. Burrows
Attorney at Law
618 NW Glisan Ste. 203
Portland OR 97209
503/241-1955

36.

Plaintiff as a prisoner is entitled to be free from cruel and unusual punishment pursuant to the parameters of the 8th and 14th Amendments to the United States Constitution. The prohibitions against cruel and unusual punishment apply to prison conditions and specifically medical care.

37.

The acts and omissions of all Defendants, subjected Plaintiff to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution, by amounting to deliberate indifference to plaintiff's serious medical needs and personal safety. Defendant violated the requirements of the 8th Amendment in the provision of medical care by causing undue delay and denial of medically necessary treatment. Defendant was also in violation of the required standard by allowing non-medical reasons to intentionally interfere with medical treatment.

38.

The specific acts of Defendant Duncan, Dahlin and Gulick alleged to be deliberately indifferent are more particularly set forth below:

1. Defendants unduly delayed and denied medical treatment by failing to adequately and timely examine Plaintiff, failing to take x-rays, failing to act on x-rays once taken, failing to order a boot brace, crutches or other devices to assist Plaintiff keep his weight from his foot and thus avoiding additional injury;

2. Defendants failed to provide adequate medical treatment by failing to refer Plaintiff to

11–PLAINTIFF'S COMPLAINT

Michelle R. Burrows
Attorney at Law
618 NW Glisan Ste. 203
Portland OR 97209
503/241-1955

an orthopedist or podiatrist or surgeon or other specialist.

3. Defendants unduly delayed and denied medical treatment for Plaintiff by failing to adequately manage and supervise subordinate nursing staff who gave poor, inadequate and substandard advise to Plaintiff and who failed to properly treat Plaintiff's complaints which all arose to patient abandonment. Defendant Gulick once informed as to the nature and extent of Plaintiff's injuries failed to conduct any follow up and effectively abandoned Plaintiff.

4. Defendants unduly delayed and denied adequate medical treatment by failing to adequately monitor the use and effectiveness of pain medications used by Plaintiff

5. Defendants abandoned this patient by failing to personally examine Plaintiff, failing to order necessary and timely treatment for his injury, by failing to act to reduce additional and ongoing injuries to the broken foot, by failing to regularly monitor the injury.

6. Defendant failed to exercise medical judgment by referring matters to the TLC in direct violation of the standard of care and failed to provided adequate and complete medical history of Plaintiffs condition to the TLC;

7. Defendant unduly delayed and denied treatment by refusing to provide Plaintiff with any effective medical care for nearly three months after a simple injury and by failing to treat that injury caused avoidable and unnecessary additional injury;

8. Defendant unduly delayed or allowed non-medical reasons to interfere with medical treatment either alone or together with others failed to adequately chart the course of treatment for Plaintiff and allowed such things as the removal the ace bandage, the inappropriate use of a pain medication, the oversight or intentional ignorance of objective tests to occur.

12–PLAINTIFF'S COMPLAINT

Michelle R. Burrows
Attorney at Law
618 NW Glisan Ste. 203
Portland OR 97209
503/241-1955

39.

As a result of the violations of the Constitutional standards set forth herein, Plaintiff suffered unremitting, avoidable and inappropriately managed pain for three months, failure to treat what could have been a simple medical problem, allowing an exacerbation of the break necessitating surgery, and emotional damages all to be more fully proven at trial but no less than $150,000.

40.

Plaintiff seeks reimbursement for all the costs he incurred for his medical files, costs of discovery, the costs of his x-rays, the costs of medication he was forced to purchase on his own his non-economic emotional pain and suffering damages to be more fully determined at trial, attorney fees and costs. Economic damages are plead as no less than $5,000.

41.

All defendants conduct were well defined by law and each defendant knew or reasonably should have known that their conduct would fall well below the standard prescribed by law herein.

SECOND CLAIM FOR RELIEF: Defendants Smith, Folkman and Does
Eight Amendment Cruel and Unusual Punishment: 42 U.S.C. §1983
Failure to Provide Medically Necessary Treatment/Delay and Denial of Essential Medical Care

42.

Plaintiff realleges paragraphs 1 through and inclusive of paragraph 41 as if more fully set forth herein.

13–PLAINTIFF'S COMPLAINT

43.

The specific acts of Defendant Smith, Folkman and Does alleged to be deliberately indifferent are more particularly set forth below:

1. Defendants unduly delayed and denied medical treatment to Plaintiff by failing to adequately examine Plaintiff, failing to take x-rays, failing to act on x-rays once taken, failing to order a boot brace, crutches or other devices to assist Plaintiff keep his weight from his foot and thus avoiding additional injury;

2. Defendants failed to provide adequate medical treatment by failing to refer Plaintiff to an orthopedist or podiatrist or surgeon or other specialist

3. Defendants failed to refer Plaintiff for an exam by a physician, provided advise and information outside the scope of their scope of practice and failed to follow up with a consult with a physician;

4. Defendants failed to provide Plaintiff with timely x-rays or other objective evaluation, failed to provide crutches, a cast or other supportive devices to assist Plaintiff protect his foot from further injury;

5. Defendants allowed non-medical reasons to interfere with medical judgment by ordering Plaintiff to relinquish his ace bandage and threatening him with the hole for failure to do so;

6. Defendants allowed non-medical reasons to interfere with medical judgment by ordering the removal and return of the ace bandage without a medical exam and without referral

14–PLAINTIFF'S COMPLAINT

to a physician;

7. Once Defendant Smith observed the x-ray results he failed to refer the x-rays for a review by a physician, failed to order an examination of Plaintiff by a physician, failed to consult with a physician concerning his observations and he failed to document any such consult if it occurred.

8. Defendant Smith failed to timely and adequately address the needs of Plaintiff to manage his pain;

9. Defendant Smith failed to timely and adequately follow up with Plaintiff respecting each one of his written communications as to his pain, his difficulties with his foot and essentially abandoned Plaintiff.

10. Defendant Smith failed to adequately chart his observations of Plaintiff in order to provide other nursing staff adequate information on the physical status of Plaintiff.

44.

The acts and omissions of Defendants Smith, Folkman and Does, subjected Plaintiff to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution, by amounting to deliberate indifference to plaintiff's serious medical needs and personal safety. Defendant violated the requirements of the 8th Amendment in the provision of medical care by causing undue delay and denial of medically necessary treatment. Defendant was also in violation of the required standard by allowing non-medical reasons to intentionally interfere with medical treatment.

15--PLAINTIFF'S COMPLAINT

Michelle R. Burrows
Attorney at Law
618 NW Glisan Ste. 203
Portland OR 97209
503/241-1955

45.

As a result of all the foregoing Plaintiff suffered financial losses incurred for copying his medical file, the cost of pain medication he was ordered to purchase from the canteen, he has suffered excruciating pain, his underlying medical condition has been exacerbate. All these damages were the direct result of Defendants failures. Plaintiff has also suffered pain, suffering and fear. The amount of Plaintiff's damages will be more fully proven at trial. The amount of economic losses are no less than $5,000. The amount of noneconomic losses are no less than $150,000.

32.

Plaintiff seeks the recovery of his economic and non-economic losses to be proven at trial, costs, fees.

WHEREFORE Plaintiff prays for judgment against all defendants as follows:

1. For all economic damages including out of pocket costs including photocopies of his medical file, and other damages to be more fully developed and proven at trial and no less than $5,000;

2. For Plaintiffs noneconomic damages for pain, suffering, fear, anxiety and emotionally loss in an amount to be more fully determined at trial and no less than $150,000.

3. For costs, fees and disbursements.

Michelle R. Burrows
Attorney at Law
618 NW Glisan Ste. 203
Portland OR 97209
503/241-1955

4. Such other relief as is equitable.

Dated this 1st day of August 2005.

Respectfully submitted,

_____
Michelle R. Burrows OSB86160
Attorney for Plaintiff

17–PLAINTIFF'S COMPLAINT

Michelle R. Burrows
Attorney at Law
618 NW Glisan Ste. 203
Portland OR 97209
503/241-1955